No. 15,223.

## NICHOLS v. COLGAN.

FRAUD.—*Misrepresentations Procuring Sale.—Defence in Action for Purchase-Money.*—Fraudulent and wilful representations concerning the adaptability and value of land, who relies thereon, and which brings about a sale to the person to whom they are made, can be pleaded as a defence in an action to recover the purchase-money, to so much of such purchase-money as actually exceeds the value of the land so purchased.

SAME.—*Agent.—Conspiracy.—Misrepresentations.*—The fraudulent representations of an agent made in pursuance of a conspiracy between the principal and agent are the representations of the principal.

From the Pulaski Circuit Court.

*W. Spangler* and *H. A. Steis,* for appellant.

*N. L. Agnew* and *B. Borders,* for appellee.

OLDS, J.—Martha Nichols, appellant, brought these proceedings against Catharine Colgan, appellee, to review a judgment on account of errors of law.

In the original complaint the appellant alleges that she was the owner of a' tract of 80 acres of land situate in Pulaski county, and she sold the same to the appellee for the sum of $1,500, to be paid for as follows: $250 cash, $250 in thirty days, and $1,000 in two years, less $183 of a school-fund mortgage then upon said land. The $817 was to be secured by a mortgage on said premises due in two years, with six per cent. interest, interest to be paid annually, and appellee to pay said school fund mortgage as a part of said purchase-price. In pursuance of said agreement appellant conveyed said land to the appellee by warranty deed on the 13th day of April, 1887, and appellee paid to the appellant $250, and appellee took possession of the premises, and still holds possession of the same, and has wholly failed and refuses to pay the sum of $250, payable in thirty days, and although requested so to do, failed and refuses to execute a mortgage securing said $817, as she agreed; that the $250 is long past due, and the

time for the execution of said mortgage has long since passed. Prayer for judgment for said sum of $250, and that the appellee be compelled to execute a mortgage for said sum of $817 in pursuance of said contract, and that the same be declared a lien on said land.

Appellee answered the complaint, and the appellant filed a demurrer to the answer, which was overruled, and exceptions reserved to the ruling. The appellant replied, and the cause was tried by the court, resulting in a finding and judgment in favor of the appellee.

The appellant filed a motion for a new trial, which was overruled, and exceptions reserved, and time given for the filing of a bill of exceptions, and the bill of exceptions was duly prepared, signed and filed in the clerk's office of said court.

The appellant filed her complaint in this action, alleging the error of the court in overruling the demurrer to the answer and overruling the motion for a new trial as grounds for reviewing the judgment.

The appellee filed a demurrer to the complaint in this action, which was sustained, and judgment rendered on demurrer, and from this judgment appellant prosecutes this appeal.

It is contended that the court erred in overruling appellant's demurrer to the appellee's answer in the original action. In said answer the appellee alleged that the appellee, at the time she made the contract, was an old, feeble, crippled woman unable to travel, walk or attend to any business for herself; that she, with her family of three sons and one daughter, were living in the city of Chicago; that the appellant and her husband well knew the condition of the appellee, and knew her family; that her son Joseph, for some three years prior thereto, and at the time of making the said contract, worked at the stock yards in said city of Chicago, and had no experience in farming, and knew nothing of farming or farm lands, as the appellant and her husband well

knew; that in March, 1887, Charles Nichols, the husband of the appellant, acting as agent for his wife, and in pursuance of a conspiracy previously formed between said appellant and her husband, came to the stock-yards in Chicago and brought with him several ears of large, fine and well-matured corn, and several large, fine and well-matured potatoes, and exhibited them to appellee's son Joseph C. Colgan and others, and said it was raised on the said eighty acres of land owned by appellant in said Pulaski county the previous year, and stated that it was a fine farm, and as good land as there was in said Pulaski county ; that the corn and potatoes were fair specimens of the crops raised on said land the previous year, and stated that there was twenty-two acres in cultivation, and there was a good house on the land; that said Charles Nichols shortly afterwards, and while still acting in pursuance of said conspiracy between himself and appellant, spoke to said Joseph Colgan, and wanted to sell him the land mentioned and described in the complaint; said Joseph told him he did not want the land as he expected to remain in Chicago, but if it was such land as he said it was he would have his mother buy it for herself and his brothers and sister a home, as his brothers were out of work, and would like to have a farm ; said Charles Nichols replied that it was as good a farm as there was in Pulaski county, and was well worth $2,000, but he did not want it and would sell it for $1,500.   Joseph then told said Nichols that neither he nor his brothers were farmers, and never farmed, and knew nothing about farming or wild land, and if they purchased the land would have to take his word as to the condition and value of the land ; that he could not go himself to see the farm, but would send his brothers to see how the buildings on the farm would suit his mother, and at the same time told him that his brothers knew nothing of farming or wild lands in this country, and had never seen corn grow ; that said Charles Nichols and Joseph Colgan for three years had been and were their friends and ac-

Nichols v. Colgan.

quaintances, having worked together at the stock-yards during that time; that shortly thereafter William and Charles Colgan, brothers of Joseph, of whom he had spoken, and said Nichols, at a time when no crops were growing on said land, came to said Pulaski county in pursuance of said agreement between said Nichols and Joseph Colgan to see said farm and inspect the buildings thereon; that said William and John Colgan, as appellant and her husband well knew, were born in England and had but recently come to America, were totally ignorant of the condition and value of farming and wild lands in America, and especially so as to lands in Pulaski county, which appear well to the inexperienced but are worthless and fit for nothing, and calculated only to deceive persons unacquainted with the condition and value of lands; that, in pursuance of said conspiracy, said appellant met her husband and William and John Colgan in Pulaski county and proceeded with them on their tour of inspection; that said William and John did not examine said land, and could not have done so if they had desired, for the reason that they did not know wild from cultivated land, as appellant and her husband well knew, but did inspect the buildings on said land, and complained that there was not enough room in the house, and said Nichols agreed to build an addition to said house to make it large enough, but failed to do so; that appellant and her husband kept said William and John away from any person who would have informed them of the true value and condition of said land, by telling them that the persons whom they met and the neighbors whom they desired to call upon were thieves and persons of bad repute, and they should be careful to have nothing to do with them, but took them to the house of one Kline, a special friend of said appellant and her husband, and said Kline, to aid them in the design of cheating the appellee, said the land was cheap at $1,500, and that it was probably in the gas belt, and if gas should be found in the county the land would at once be worth double that sum;

that said land lies a short distance from the town of Gundrum in said county, and when they were passing through said town in going to the land, knowing the appellee was a member of the Catholic church, and a daily attendant on the service in said church, and knowing she was unable to go more than a short distance to church, told said John and William that there was a Catholic church in said town, and pointed out the place where he said it was located, which was hidden from view by some trees, and pointed out the house which he said was the residence of the priest; that said representations made by the appellant and her husband were communicated to her, and she made the contract mentioned in the complaint, believing the same to be true, and implicitly relying on the same, but she avers that said representations were wholly and totally false and fraudulent, and were made only for the purpose of cheating and defrauding her; that the land, so far from being worth $1,500, was not worth more than $400 at the time she made said contract, and was not worth $250, subject to the $183 mortgage thereon; that it was not worth as much as the best land in said county, but was and is poor, wet, swampy and inferior, and almost worthless, while there are fine, valuable lands in said county, worth more than $200 per acre; that said corn and potatoes exhibited to her said son Joseph were not grown on said land, and were not fair samples of the corn and potatoes grown on said land the previous year; that the corn and potatoes grown on said land the previous year were poor, small and worthless; that there was only five acres in cultivation on said land, instead of twenty-two acres, as represented; that there was no Catholic church at Gundrum, and none nearer than Winamac, a distance of eight miles, as said Nichols well knew, and she is deprived of attending church service; that neither the appellee nor any of her family ascertained the true condition of said land until after she had taken possession of the same and moved upon it; that at the time she made said contract and received said deed

she had never seen said land, and took it wholly upon the faith of the statements and representations made by said appellant and her husband, which were false, as they both well knew.

Some of the representations alleged in this contract are not such as would be available.

The facts alleged in the paragraph show that the negotiations were carried on principally by the husband of the appellant acting for her, and by the sons of the appellee acting for the appellee. If a fraud was practiced by false representations made by the husband of the appellant in pursuance of a conspiracy between the appellant and her husband to the sons of the appellee acting for the appellee in negotiating the purchase, the appellee is as clearly entitled to relief against the fraud as if the representations were made to her in person.

It clearly appears from facts alleged that the appellee was in such a state of health on account of age and other afflictions that she was not able to get about and attend to the business herself; that the sons were totally unacquainted with landed property, as to the condition of the soil, its state of cultivation and value, and that these facts were all well known to the appellant and her husband. It alleges that the appellant and her husband entered into a conspiracy to cheat and defraud the appellee in the sale of the land, knowing that the negotiations would have to be conducted through the sons of the appellee. It further appears that the husband, Charles Nichols, and Joseph Colgan, were, and for three years had been, friends and associates, having worked together during that time, and taking advantage of the friendship, after being admonished by Joseph that he knew nothing about the condition of either farm or wild land, or of the value of either, and if a purchase was made he would have to rely on his representations as to its condition and value.

We think the answer clearly states facts sufficient to withstand a demurrer.

The only other question presented by the record and discussed by counsel relates to the sufficiency of the evidence to sustain the finding of the court.

There is no such lack of evidence that this court would have reversed the judgment on appeal, and hence the appellant is not entitled to have the judgment reviewed on account of the insufficiency of the evidence.

There was no error in sustaining a demurrer to the complaint.

Judgment affirmed, with costs.

Filed Feb. 18, 1892.